99500

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

GLORIA E. SWANSON )
           , )
            )
        Plaintiff, )
v. )
            )
COMCAST CORPORATION, a/k/a )
XFINITY         , )
            )
        Defendant. )

**Case No.: 19cv6123**
**Judge: Andrea R. Wood**
**Magistrate Judge: Sunil R. Harjani**

FILED

SEP 1 2 2019 AM

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

## **COMPLAINT**

NOW COMES, GLORIA E. SWANSON on her own behalf, as pro se plaintiff, for her

Complaint against Defendant COMCAST CORPORATION, a/k/a XFINITY (hereinafter

referred to as, "Comcast").

    1.     This Court has federal subject matter jurisdiction pursuant to the diversity statute,

28 U.S.C. §1332.  Plaintiff Gloria E. Swanson is a resident of Illinois.

    2.     Defendant Comcast is headquartered in Philadelphia, Pennsylvania, but conducts

business in the State of Illinois as well as in various states throughout these United States.  For

purposes of this lawsuit, Comcast Corporation also known as Xfinity, operating as a Cable T.V.,

Internet and Home Security provider in the State of Illinois is hereinafter referred to as

"Comcast".

    3.     Venue is proper in the Northern District of Illinois because the acts at issue were

perpetrated against Plaintiff Gloria E. Swanson who is a resident in this district.

    4.     Gloria E. Swanson (hereinafter referred to as "Plaintiff" and/or "Swanson") is a

resident of Chicago, County of Cook, Illinois.  Plaintiff is a Comcast customer and has been such

for the last 31 years since 1988 with all services by Comcast provided to Plaintiff at Plaintiff's

99500

home address of 8920 S. Chappel Ave., Chicago, Illinois 60617.

## COUNT I.

## FRAUDULENT CONCEALMENT

## FACTS

5.      Defendant, Comcast committed fraudulent concealment and fraudulent misrepresentation with the Intent to deceive or defraud in a contractual arrangement by the deliberate hiding, nondisclosure, or suppression of a material fact or circumstance it was legally or morally bound to reveal. Comcast engaged in deliberate suppression of material and information necessary for Plaintiff to make a decision concerning any changes to her then current Comcast/Xfinity package.

6.      Under contract law, a plaintiff can recover from a defendant on the grounds of fraudulent concealment where the defendant (1) concealed or suppressed a material fact; (2) had knowledge of this material fact; (3) that this material fact was not within reasonably diligent attention, observation, and judgment of the plaintiff; (4) that the defendant suppressed or concealed this fact with the intention that the plaintiff be misled as to the true circumstances; (5) that the plaintiff was reasonably so misled; and (6) that the plaintiff suffered damage as a result..

7.      Plaintiff, Swanson, has been a Comcast Cable customer since 1988 without interruption. Plaintiff has her cable TV on five (5) TV's in her home, as well as her Internet service and home security system with Comcast with home security cameras. Plaintiff's monthly bill is approximately $308.00 a month (Exhibit 1). Plaintiff viewed her most recent bill which she received during the week of August 12, 2019 and realized that she was still being charged for HBO which Plaintiff does not now need. Plaintiff had left HBO on for her husband, but he

2

99500

passed away in November of 2017, and on August 16, 2019, Plaintiff decided she could save that $15.00 a month since she doesn't watch HBO.

8.      Plaintiff watched her "ID Discovery Channel" for sixty to 70% of her viewing time up until Friday, August 16, 2019 when Plaintiff was fraudulently duped out of her I.D. Discovery Channel by Comcast when Plaintiff simply made a call to Comcast to take off HBO and to ascertain why she was being charged for "All room DVR" when she was only able to DVR from one TV in her home.

9.      When Plaintiff phoned Comcast from her job to take the HBO off and to let them know that she was being charged for "Any room DVR Service", but could only DVR from one TV in her home, Plaintiff told the gentleman on the phone (8-16-19 approximately 10:30 a.m.) that she wanted to drop HBO and that she was not able to DVR from the other TV's in her home besides the one in the kitchen.

10.     Plaintiff went on to explain that she pretty much watches much of the same channels, like the Hallmark channel.  He said, "*I can give you a package that will save you $60.00 a month and you'll pay $270.00 and be able to keep EVERYTHING THAT YOU CURRENTLY HAVE.*"  This was around 10:30 a.m. on Friday, August 16, 2019 speaking with someone with a slight Asian dialect who Plaintiff thinks identified himself as "Juan".

11.     Plaintiff  had also questioned the Comcast agent about why her bill was showing "Service to Additional TV with TV Box" at three entries and at three different prices, $9.95, $4.14 and $13.98".  The man stated that Comcast was going to be only charging $5.95 for this "Service to Additional TV with Box" and that it was taking some time to get around to everyone and change the bills.

12.     Without Plaintiff asking for any savings packages, the Comcast agent offered Plaintiff the $270.00 per month program without actually addressing the questions Plaintiff posed about her being charged for "All Room DVR", but the Comcast agent voluntarily assured Plaintiff and was emphatic that Plaintiff would be able to keep everything she already had. The Comcast agent then told Plaintiff that she would have to "approve" it. Plaintiff does not recall ever being asked to "approve" anything with Comcast, but the Comcast agent sent the text to her cell phone. Plaintiff was calling from her office telephone. She received the text and checked the boxes the Comcast agent indicated and submitted it.

13.     However, when Plaintiff got home at 6:30 p.m. on August 16, 2019, she turned to her favorite channel which she watched 70% of the time, I.D. Discovery. Working as a legal secretary/assistant for 40 years and having trained as a court reporter, Plaintiff enjoys true-to-life stories and crime stories instead of sitcoms.

14.     On Friday evening, August 16, 2019, after speaking with the Comcast agent at 10:30 a.m. that morning, suddenly, when Plaintiff arrived home, the "ID Discovery" channel showed up on Plaintiff's TV as "Not Authorized". Plaintiff said, "Oh, Lord, this guy messed up and took away my favorite channel." However, Plaintiff felt she could call Comcast back under their normal change arrangements where people can change things back within two weeks if they don't like it, and change everything back to the way it was rather than lose "I.D. Discovery", especially since Plaintiff felt that the sudden inaccessibility of her "I.D. Discovery" channel was a mistake on Comcast's part since she had been told earlier in the day by Comcast's agent that the new package would "keep everything she currently had.".

15.     Someone named "Jamie" was Comcast's agent at 6:30 p.m. on August 16, 2019. When Plaintiff explained that her "I.D. Discovery" channel was missing, Jamie said, "Oh, you

99500

made a change in service and that channel is no longer offered to you." Plaintiff said, "Well, you can change it back." And this agent, Jamie, said, "Unfortunately, no I can't . . . once you change, you cannot go back and plus, you approved it." Plaintiff said, "I can't believe that. Anybody can go back to a previous service."

16.     Plaintiff was appalled and upset that she was duped with the first agent assuring her that the new package he took the liberty of offering her would have everything she currently had. In addition, Comcast's "Jamie" began to almost taunt Plaintiff by continuing to say, "You approved it, you approved it". Plaintiff said, "I approved it on a "Lie" because the agent who set it up said I would have everything I already had, and he never mentioned that I would be missing any channels." The first agent that switched Plaintiff over to the $270.00 program never mentioned that any channels would be missing and certainly did not "name" the channels. If he had said that Plaintiff would lose "I.D. Discovery", Plaintiff would have ended the conversation right there and left everything as it was. But as stated, the early agent who made the switch at 10:30 a.m. on the morning of Friday, August 16, 2019, dangled "saving money" in Plaintiff's face when Plaintiff had not mentioned anything about money other than taking the HBO channel off of her bill.

17.     On this 6:30 p.m. call, this Jamie started getting snappy saying "You approved it." When Plaintiff asked his name, he got nastier and said, "I'm Jamie somebody". As upset as Plaintiff was with this degrading and insulting treatment after being a loyal customer of Comcast for 31 years, she does not recall Jamie's last name, but it may have been, "Johnson". Plaintiff asked to speak to a manager and said she needed her service changed back, but Jamie said something else in anger and hung up on Plaintiff.

18.     This was at around 6:30 p.m. on Friday, August 16, 2019. Plaintiff called Comcast back and got someone named Dorell at about 6:45 p.m. Plaintiff told Dorell what had transpired with the man hanging up on her, and although Dorell apologized for Plaintiff having to experience such a fiasco, Comcast's agent, Dorell reiterated what Jamie had said, i.e., that Plaintiff could not change back to what she had.

19.     Dorell stated that Comcast no longer had a contract with "I.D. Discovery" channel along with three other channels, which he named as We-TV, Up TV and WGN-America as the four channels that the program Plaintiff was switched to no longer had access to.

20.     Plaintiff asked Dorell how she was able to have the "ID Discovery Channel" all this time, since Dorell stated that Comcast did not renew its contract with ID Discovery channel some months ago.

21.     Comcast's agent, Dorell, said, "Well, if you never changed your services, you are grandfathered in, but once you change, you can never get I.D. Discovery back again." The man Plaintiff spoke with at Comcast at 10:30 a.m. on Friday, August 16, 2019 NEVER TOLD PLAINTIFF ANYTHING ABOUT LOSING any channels and especially, not losing the "ID. Discovery" channel.

22.     If the Comcast agent had mentioned "ID Discovery", Plaintiff would have ended the conversation then and left things the way they were with the exception of taking HBO off. Even if the Comcast agent had told Plaintiff that morning that she would lose ID Discovery if she took HBO off, Plaintiff would have eaten the $15.00 a month for HBO just to keep "ID Discovery". I.D. Discovery advertises its station as the "ADDICT" station because they know that people get hooked on it and it has become very popular.

99500

23. Knowing how popular it is, I.D. Discovery may have gone up on their prices with Comcast causing Comcast not to renew their contract with "I.D. Discovery". In fraudulent concealment and deception, rather than tell its customers that they no longer have "I.D. Discovery" as an option, and rather than risk their customers bolting to another cable service or to AT&T U-Verse, Comcast decided to grandfather in or not snatch the "I.D. Discovery" channel from its current customers who had the channel.

24. However, Comcast instead chose to engage in consumer fraud and deceptive business practices by tricking their Comcast/Xfinity Bundle package customers into a change in service in order to trigger the loss of those customers' "grandfathered in" status for the "I.D. Discovery" channel. Again, Plaintiff did not call Comcast on the morning of August 16, 2019 to try to save money. Plaintiff simply wanted to remove the HBO from her account since she did not watch it and it was on her service because Plaintiff's husband had watched it, but Plaintiff's husband passed away in November, 2017. Plaintiff also needed to know why her bill was showing "All-Room DVR" when Plaintiff had tried in vain to DVR from any of the other four of her five TV's and the DVR did not work, except on the one TV. Plaintiff called to find out why she was being charged for "All Room DVR" when that was not true in terms of her inability to DVR from the other TV's in her home.

25. Comcast indulged in unfair methods of competition and unfair and deceptive acts and practices, including the use of deception, fraud, false pretense, false promise, misrepresentation and the concealment, suppression and omission of such material facts that were necessary for Plaintiff to be informed of before she allowed Comcast's agent to change her service, especially when Plaintiff only called with legitimate billing questions, not a change in service nor seeking any kind of significant monetary savings which were dangled in her face as

a ploy to get Plaintiff to lose her grandfathered-in status on the "ID Discovery" channel.

Plaintiff has no idea what financial obligation Comcast continues to have with the "I.D.

Discovery" channel for the Comcast customers who remained "grandfathered-in" after Comcast

did not renew its contract with the "I.D. Discovery" channel. However, whatever the financial

arrangements are for Comcast with "I.D. Discovery" for the Comcast customers like Plaintiff

who continued accessing "I.D. Discovery" under the grandfather clause, it has caused Comcast

to stoop to violations of the Uniform Deceptive Trade Practices Act of August 5, 1965 where it

is unlawful when any person (Plaintiff in this case) has, in fact, been misled, deceived or

damaged thereby.

      26.     The doctrine of Fraudulent Concealment was detailed by Justice Dickson in

*Guerin v. Canada*, [1984] 2 S.C.R. 335 at 390, 13 D.LR. (4th) 321: . . . The fraudulent

concealment necessary [to postpone a limitation period] need not amount to deceit or common

law fraud. Equitable fraud, defined in *Kitchen v. Royal Air Force Associatio*n [1958] 1 W.L.R.

563, as 'conduct which, having regard to some special relationship between the two parties

concerned, is an unconscionable thing for the one to do towards the other, is sufficient." The

special relationship between Plaintiff, Swanson, and Defendant, Comcast, is that Plaintiff has

been a Comcast customer for 31 years without interruption for her cable TV services, Internet,

and Home Security. In *M.(K.) JM.(K.) v. M.(H.)*, [1992] 3 S.C.R. 6 (S.C.C.)], the Supreme

Court noted at 57 that the factual basis for fraudulent concealment is described in Halsbury's 4th

Ed,., vol. 28, para. 919 at p. 413: "It is not necessary, in order to constitute fraudulent

concealment of a right of action, that there should be active concealment of the right of action

after it has arisen; the fraudulent concealment may arise from the manner in which the act which

gives rise to the right of action is performed." Therefore, Comcast has clearly committed,

99500

misrepresentation of a material fact, knowledge on the part of the accused that they were misrepresenting the fact, the misrepresentation was made purposefully, with the intent of fooling the victim, the victim [Plaintiff] believed the misrepresentation and relied upon it, and the victim suffered damages as a result of the misrepresentation.

27.     The Defendant, Comcast, concealed Plaintiff's right of action (either actively, or as a result of the manner in which the act that gave rise to the right of action is performed) when its agent lied to Plaintiff in switching her service and stating that Plaintiff would "keep everything that she currently had." The Defendant, Comcast, fraudulently concealed Plaintiff's right of action when its agent knew, without informing Plaintiff, that if Plaintiff accepted the unsolicited service Comcast's agent was offering to Plaintiff on August 16, 2019, that Plaintiff would lose four channels, including the "I.D. Discovery" channel.

28.     Comcast neglected to communicate that which it knew and ought to have communicated to Plaintiff. Comcast knew the fact which it neglected to communicate and disclose to Plaintiff; Comcast was duty bound to disclose to Plaintiff that she would lose four channels, including "I.D. Discovery channel", Comcast made no warranty of the fact concealed, and Plaintiff had no means of ascertaining the fact concealed when she "approved" the change in service pushed upon her by the Comcast agent. Comcast's fraudulent concealment and deception not only took place by adding false information and lying, but it occurred by hiding information from Plaintiff. Therefore, Comcast is guilty of Fraudulent Concealment.

## COUNT II.

## COMMON LAW FRAUD

29.     Comcast has engaged in a practice of common law fraud when they did not inform Plaintiff of the channels that she would lose when they "offered" her a different package

99500

(which she did not ask for) simply solicited as "saving" Plaintiff $60.00 a month. These statements by Comcast's agent at 10:30 a.m. on August 16, 2019 were sufficiently made without informing Plaintiff that she would lose any channels and with the further, unsolicited assurance by Comcast's agent to Plaintiff that she would "keep everything that she currently had."

30.     Again, Comcast records all of their telephone calls and those recordings will prove that the Comcast agent Plaintiff spoke to at 10:30 a.m. on Friday, August 16, 2019 NEVER SAID ANYTHING about losing any channels. Anybody who knows Plaintiff knows that she watched "I.D. Discovery" all the time, like an ADDICT! Plaintiff truly enjoyed "I.D. Discovery" and all she did was make one phone call to question her bill with Comcast and was duped into losing her regular service which included her favorite channel, I.D. Discovery, never to be able to get it back again.

31.     The first Comcast agent Plaintiff spoke with never told her that the package he was switching her to was called a "Simple programming package" which Plaintiff learned from the fourth person she spoke to at Comcast on Friday evening, August 16, 2019. Plaintiff spoke to another Comcast agent at approximately 7:30 p.m. on August 16, 2019, someone named Lisa, who gave a name to the program option Plaintiff had been switched to. Comcast agent, Lisa, stated that all of their agents were "trained" to tell the customers that they would be losing the four channels, but as stated, Comcast and anyone else can listen to the recording of the call at 10:30 a.m. on 8/16/19 and hear everything that Plaintiff is complaining of i.e., the man said, "For $270.00 a month, you will get everything that you are getting now . . . " where he never mentioned losing any channels, let alone the "I.D. Discovery" channel.

32.     Plaintiff simply called Comcast to question the fact that she was paying for "All room DVR" and was not getting that option, only able to DVR on one TV out of the five cable TV's in her home.   Plaintiff also called to take the HBO option off of her bill because she does not watch HBO and to question why there were three references on her bill to "Service to Additional TV with TV box, all for different charges, i.e., $9.95, $4.14 and $13.98.  This man also stated that Comcast was going to start charging $5.95 for each of those services, and when Plaintiff asked why she was still being charged these varying amounts, he stated something to effect that they hadn't gotten around to all their old customers to make the change.

33.     The Comcast agent Plaintiff spoke to who changed her service was deceptive. Plaintiff believes that Comcast intentionally instructed their agents to deceive customers who call in and who had access to or were grandfathered in to the "I.D. Discovery" channel in order to "trick and fool" the customer into a change that would take away the access to "I.D. Discovery", never to be able to get that channel again with Comcast and unbind Comcast from whatever financial obligations it has with "I.D. Discovery" in relation to its grandfathered in customers.  Comcast had a duty to disclose a material fact where Plaintiff placed her trust and confidence in Defendant, Comcast, thereby placing Defendant in a position of influence and superiority over Plaintiff.  Plaintiff can plead a consumer fraud violation based on statements made directly by Comcast's agent to Plaintiff, which statement was a lie, fraudulent, deceptive and an act of fraud and concealment.  The statement by Comcast's agent was made in trade or commerce.

34.     Comcast's agent on behalf of Comcast was aware that Plaintiff would lose four channels, including "I.D. Discovery", by changing to the Comcast package he solicited to Plaintiff, but did not disclose that fact to Plaintiff.  Since a fourth Comcast agent on the evening

99500

of August 16, 2019, Lisa, apologized to Plaintiff for the fiasco she was exposed to, Lisa stated

that "all agents are trained to inform customers that they would lose four channels", Plaintiff

was duped by this material omission when the first agent never stated that Plaintiff would lose

any channels and further solidified the deception by stating that "You will keep everything that

you already have." By being in a hurry to send text messages to have the Comcast's customers

"approve" the change, Comcast has engaged in a practice of consumer fraud and concealment

regarding the Cable TV channels that would no longer be available when customers were

brought into a new package. In the instant case, Plaintiff did not call Comcast on August 16,

2019 to purchase or be put into a new package but had it thrust upon her and then she was

pushed into a quick, text message approval in order for Comcast to try to legally appear to back

up the change with inducing Plaintiff and other customers to check off on a texted approval of

the change. However, Plaintiff checked the box and approved the change on a lie by Comcast

and its agent and fraud and fraudulent concealment of pertinent and material information.

    35.    Plaintiff has given Comcast plenty of notice of her dissatisfaction with the fraud,

false statements, misrepresentation and concealment. However, after an official complaint to

the Federal Communications Commission ("FCC") (Exhibit 2), Comcast had a representative

from its Executive offices in Philadelphia make arrangements to speak with Plaintiff by

telephone, but that representative offered nothing other than a one-month credit to Plaintiff's

account, but with the emphatic continued statement that Plaintiff can NEVER get her "I.D.

Discovery" channel back. Plaintiff refused to accept Comcast's offer of a one month credit and

is filing this lawsuit to hold Comcast accountable for its fraud, deception and fraudulent

concealment. Plaintiff refused to change companies simply because she was defrauded and

duped. The purpose of this lawsuit is to make Comcast be held accountable for its deceptive

and fraudulent practices without Plaintiff being forced to change cable carriers after her loyalty to Comcast for over 31 years has caused her to be duped and treated so shoddily.

36.     Plaintiff never asked to change her Service package.  All Plaintiff called Comcast for was to take the HBO off, the extra $15.00 a month option off and to ask why she wasn't getting the "Any room DVR" that she was being billed for when she could only DVR from her kitchen TV.

37.     The Comcast agent never told Plaintiff that she would lose anything.  He never named channels that would not be available if Plaintiff made any changes.  All he did was dangle a so-called $60.00 per month savings in front of her (when the actual savings is only around $38.00 and less than that minus the HBO charge) and he never said that the change entailed the loss of specific channels.

38.     After talking to and confirming with Dorell, the third person Plaintiff called at Comcast at around 6:45 p.m. after the Jamie person she called at 6:30 p.m. hung up on her, Dorell confirmed that Plaintiff would not be able to get I.D. Discovery anymore.

39.     Plaintiff turned on another TV in her home office and when she punched in the "I.D. Discovery" channel number, an error message came up saying, "271-ID channel is not authorized.  To access this channel please call Comcast at 1-800-COMCAST and choose technical help. Status Code 580".  This message makes it appear that one can GET the "ID Discovery" channel simply by calling Comcast and asking for Technical help.

40.     This whole process is deceptive and fraudulent concealment as well as common law fraud by Comcast as a result of one call by Plaintiff to Comcast to make a complaint about why she was being charged for "All room DVR" when she could never DVR from all rooms and while trying to get rid of HBO".  Comcast's misrepresentations and deception caused

Plaintiff to be duped into upsetting her entire routine and being treated rudely by Comcast's Jamie who told Plaintiff she couldn't get her service back while taunting Plaintiff that she had "approved it". In spite of Plaintiff attempting to tell Jamie that whatever she "approved" was approved on a lie because Plaintiff was told the new package would give her everything she already had except the HBO, Jamie basically started "screaming" at her, "You approved it, you approved it."

41.     This behavior on the part of Comcast's agents shows that in its deception, fraud and concealment, Comcast likely instructed its employees to lie, trick and dupe customers who had been grandfathered into the "I.D. Discovery" channel package to get the customer to "change their services", accomplished at any cost, including lies, misrepresentation, and concealment for the purpose of then causing the forfeiture of the customer's grandfathered-in status with the "I.D. Discovery" channel.

42.     Defendant, Comcast can confirm all of this if they listen to the recordings of the first two phone calls on 8-16-19, the one with the Comcast agent who never mentioned that Plaintiff would lose any channels, and never named the loss of any specific channels, i.e., "I.D. Discovery" and three other channels, as well as the unpleasant conversation with Comcast' s agent, Jamie.

43.     Plaintiff called back after the code number came up thinking that maybe she could "pay for the I.D. Discovery" since the Code Error said call for access, and she got a Comcast lady agent named Lisa. Lisa was very apologetic, but said that Plaintiff had been grandfathered into the I.D. Discovery by not having changed her service and that all Comcast's agents are trained to TELL EVERYONE ABOUT LOSING THOSE FOUR CHANNELS IF THEY ACCEPT THE Simple Program. Plaintiff was never told about losing any channels.

44.     No one mentioned that name "Simple package" until Plaintiff spoke with this Lisa

45.     The first agent at Comcast that changed Plaintiff over to that program never called it by name and only said, "I have a package that will cost $270.00 a month, saving you about $60.00. In fact, Plaintiff is only saving about $38.00 a month, and Plaintiff certainly would not have changed anything if she had known that her I.D. Discovery channel would be gone forever.

46.     To add insult to injury, Plaintiff was cleaning her remote control on Saturday morning and accidently hit the DVR button as she also does not DVR a lot, but wants it available when she needs it. By hitting the button accidently, the message then arose on Plaintiff's TV that her DVR service was not available. Plaintiff called Comcast again on Saturday morning, August 17th, 2019 to ask what happened to her DVR access. Plaintiff spoke with a nicer person named Mariah who stated that whenever there is a change in service, the customer has to specifically "Order" the DVR and pay the additional $10.00 per month. Again, the agent Plaintiff spoke with at 10:30 a.m. on Friday, August 16, 2019 told her that for the $270.00 per month, Plaintiff would have "everything that you currently have", so another lie.

47.     For Comcast's fraud and deception, it is only necessary that Defendant meant to induce action by some particular person (Plaintiff) in reliance upon a false statement. Plaintiff actually relied on the Comcast's agent's statement that "You will keep everything you currently have." When Comcast responded to Plaintiff due to Plaintiff's FCC complaint, Plaintiff was only told that the "agent was talked to". In that conversation, Defendant Comcast's agent, Andrea, from their Executive offices, did not attempt to deny the false promises and lies that its agent made to Plaintiff in order to induce Plaintiff to accept a service that was allegedly going to save her $60.00 a month. Additionally, in accordance with Plaintiff's Comcast bill, the new

99500

service would only save Plaintiff $38.00 per month and, again, Plaintiff was never told that she would lose any channels. Plaintiff was assured that she would "keep everything she currently had", along with the alleged $60.00 monthly savings. The misrepresentation was an immediate inducement to cause Plaintiff to approve the new service and without such representation, Plaintiff would not have entered into the approval or new transaction had she known she would lose channels, specifically if the "I.D. Discovery" channel was mentioned as one channel Plaintiff would lose.

WHEREFORE, Plaintiff respectfully asks this Court for the following relief:

(a)     damages sufficient to fully compensate Plaintiff in the amount of $75,000 for her pain and suffering, mental and emotional stress suffered as a result of the deceit, lies, fraudulent concealment and misrepresentations by Comcast in duping Plaintiff into accepting a service package which she never asked for or called about, all to Plaintiff's detriment when Comcast never informed Plaintiff that she would lose the "I.D. Discovery" channel and three other channels while Plaintiff relied upon Comcast's representation that she would "keep everything she currently had";

(b)     punitive damages in the amount of $30,000 for Comcast's Fraudulent Concealment and Common Law Fraud against Plaintiff with Comcast knowing that Plaintiff would lose "ID Discovery" and three other channels, while falsely leading Plaintiff to believe that she would "Keep everything she currently had", when Comcast knew that it was concealing material information and deceiving Plaintiff. This deception has uprooted Plaintiff's routine in TV watching and caused Plaintiff to have to forego access to her favorite TV channel, "I.D.

99500

Discovery" where, "I.D. Discovery" advertises itself as the "ADDICT" station, and where Comcast's fraudulent actions in usurping the "I.D. Discovery" channel from Plaintiff has caused withdrawal and upset to Plaintiff's life.

(c)   Such other relief as the Court deems just.

Respectfully submitted

*Gloria E. Swanson*

Gloria E. Swanson, Plaintiff, pro se,

Dated:  September 12, 2019

Gloria E. Swanson, Plaintiff pro se
8920 S. Chappel Avenue
Chicago, IL  60617-2919
Tele. No. 773-731-6014
Email:  Gswanson8920@aol.com
99500 pro se

17

# APPENDIX

EXHIBIT

XFINITY/Comcast Statement for Gloria Swanson, dated August 7, 2019          1


Federal Communications Commission Complaint No. 3470885 dtd. 8/16/19          2

# EXHIBIT 1 - Xfinity/Comcast Statement dated 8/7/2019

GLORIA E. SWANSON

       Plaintiff

    v.

COMCAST CORPORATION, a/k/a
XFINITY,

       Defendant.



| | Account Number | Billing Date | Services From | Page |
|---|---|---|---|---|
| | 8771 30 031 0005131 | Aug 07, 2019 | Aug 15, 2019 to Sep 14, 2019 | 1 of 4 |

# Hello Gloria Swanson,

Thank you for choosing Xfinity from Comcast.

## Your bill at a glance
For 8920 S CHAPPEL AVE, CHICAGO, IL, 60617-2919

| | | |
|---|---|---|
| Previous balance | | $183.39 |
| Payments | | $0.00 |
| **Balance forward due now** | | **$183.39** |
| Regular monthly charges | Page 3 | $308.02 |
| One-time charges | Page 3 | $10.00 |
| Taxes, surcharges & fees | Page 3 | $26.56 |
| **New charges due Sep 04, 2019** | | **$344.58** |

| **Amount due** | **$527.97** |
|---|---|

**⚠ Your account is past due**
Your account is past due, so you may have been charged a late fee of $10.00. To keep your services, please pay the balance forward now. Thanks!

## Your bill explained

- This page gives you a quick summary of your monthly bill. A detailed breakdown of your charges begins on page 3.

- The charge on your bill is different this month because you have some one-time charges on your account. See One-time charges for more details.

- Any payments received or account activity after Aug 07, 2019 will show up on your next bill. View your most up-to-date account balance at Xfinity.com/myaccount

### Need help?

- Visit xfinity.com/customersupport or see page 2 for other ways to contact us.

*200 pd at Comcast 8/17/19*

Detach the bottom portion of this bill and enclose with your payment

Please write your account number on your check or money order

| Account Number | Billing Date | Services From | Page |
|---|---|---|---|
| 8771 30 031 0005131 | Aug 07, 2019 | Aug 15, 2019 to Sep 14, 2019 | 2 of 4 |

## Tune in for kid-friendly entertainment

Xfinity X1 is the ultimate kids' destination for shows, movies, and more. Kids can watch live TV, Xfinity On Demand, and DVR recordings that are age-appropriate—all in one place.

Start watching by saying **"Kids"** in your X1 Voice Remote.



## Faster is better

Unlike Bill Sr. and Karolyn, Bill Jr. lives life in the fast lane. So can you. Use My Account 24/7 for easy bill pay, tech support, and more.

See how by saying **"Slowskys"** in your X1 Voice Remote or visiting **xfinity.com/service**.



## Contact

We're here to help when you need us.

 **By chat**
Visit xfinity.com/chat

 **Social**
Tweet us @comcastcares

 **By app**
Download the My Account app at xfinity.com/apps

 **By phone**
Call 1-800-XFINITY (1-800-934-6489)

 **In store**
At your nearest XFINITY store find one at xfinity.com/storelocator

## Useful information

**Moving?**
Visit **xfinity.com/moving** today to help you stay connected to all of your XFINITY services.

**Accessibility**
If you are hearing/speech impaired, call 711.

For closed captioning concerns and other accessibility issues affecting customers with disabilities, call 1-855-270-0379, go online to chat live at https://www.xfinity.com/support/account/accessibility-services, email accessibility@comcast.com, fax 1-866-599-4268, or write to Comcast at 1701 JFK Blvd., Philadelphia, PA 19103-2838 Attn: S. Adams.





| Account Number | Billing Date | Services From | Page |
|---|---|---|---|
| 8771 30 031 0005131 | Aug 07, 2019 | Aug 15, 2019 to Sep 14, 2019 | 3 of 4 |

## Regular monthly charges — $308.02

### Your Xfinity package — $169.95

**XFINITY Home Triple Play** — $169.95
Includes Digital Starter, TV Box, Blast! Internet and XFINITY
Home Secure 350

### Add ons — $62.80

| | |
|---|---|
| Digital Preferred | $17.95 |
| HBO | $15.00 |
| HD Technology Fee | $9.95 |
| 24/7 Video Recording | $19.90 |
| XFINITY Home (per Camera) Qty 2 @ $9.95 each | |

### Equipment & services — $57.02

| | |
|---|---|
| Anyroom DVR Service | $10.00 |
| Service To Additional TV With TV Box | $9.95 |
| Service To Additional TV With TV Box | $4.14 |
| Service To Additional TV With TV Adapter Qty 2 @ $6.99 each | $13.98 |
| Service Protection Plan Inside Home Wiring Protection For Your Cable TV, High-speed Internet and Voice Services | $5.95 |
| Internet/voice Equipment Rental | $13.00 |

### Other charges — $18.25

| | |
|---|---|
| Broadcast TV Fee | $10.00 |
| Regional Sports Fee | $8.25 |

## One-time charges — $10.00

### Other charges — $10.00

| | | |
|---|---|---|
| Late Fee | Aug 07 | $10.00 |

## Taxes, surcharges & fees — $26.56

### Service fees — $9.41

| | |
|---|---|
| Franchise Fee | $9.34 |
| FCC Fee | $0.07 |

### Taxes & surcharges — $17.15

| | |
|---|---|
| PEG Access | $1.82 |
| City Amusement Tax | $14.16 |

continues...

### What's included?

**TV:** 220+ Channels

**Internet:** Download as fast as 150 Mbps

**Home:** 24/7 Security with Professional Monitoring

Visit **xfinity.com/myaccount** for more details

| Account Number | Billing Date | Services From | Page |
|---|---|---|---|
| 8771 30 031 0005131 | Aug 07, 2019 | Aug 15, 2019 to Sep 14, 2019 | 4 of 4 |

...continued

| | |
|---|---|
| Leased Transaction Tax | $1.17 |

## Additional information

Local Unit of Government: City of Chicago, Dept of Business Affairs and
Consumer Protection 121 N LaSalle St., Room 805, Chicago, IL 60602
Customers may contact the City at 311 or 312-744-6060 regarding cable
complaints. FCC IDs: IL1104, 0985, 0984, 0955 and 1105

Good News! Effective July 23, 2019, Fox Sports 2 will now be available in HD
on channel 1209. A standard definition option will remain available on channel
409.

Good News! Effective July 25, 2019, PAC-12 will now be available in HD in our
Sports & Entertainment tier.

On July 23, 2019, Xfinity added two new international channels, ABP News
and TV Jade, in High Definition (HD). To learn about how to access these
channels, please visit www.xfinity.com/learn/digital-cable-tv/international

Good News! Effective July 16, 2019, Up TV channel will be available in our
Kids & Family tier.

Information on programmer contract expirations, which could affect our
carriage of the programmer's channels, can be found at
https://my.xfinity.com/contractrenewals/ or by calling 866.216.8634



# EXHIBIT 2 - Federal Communications Commission Complaint #3470885

GLORIA E. SWANSON

       Plaintiff

    v.

COMCAST CORPORATION, a/k/a
XFINITY,

       Defendant.

**From:** FCC <consumercomplaints@fcc.gov>
**To:** Gswanson8920 <gswanson8920@aol.com>
**Subject:** Request received: Comcast Cable TV, Chicago
**Date:** Fri, Aug 16, 2019 8:49 pm

---

##- Please type your reply above this line -##

Hi GLORIA,

Thank you for your submission. Your request has been received and assigned Ticket No. 3470885. Throughout the complaint process, you will receive periodic emails updating you about the status of your complaint.

If you have information to add to your complaint, please respond directly to this email.

You can view a list of frequently asked questions about the informal complaint process at:
https://www.fcc.gov/consumercomplaints/FAQs

Your submission provides the FCC with important information we can use to develop policies to protect consumers, remedy violations of the Communications Act, and encourage future compliance with the law.

Thank you for your help in furthering the FCC's mission on behalf of consumers.

---

This email is a service from FCC Complaints.

[L7VE7G-E4P2]